USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/29/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GISELLE MAURICE,

                Plaintiff,

-v-

LYNSEY PLASCO-FLAXMAN AND JOEL PLASCO,

                Defendants.

No. 18-CV-8841 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Giselle Maurice filed this action alleging that Defendants Lynsey Plasco-Flaxman and Joel Plasco discriminated against her on the basis of race in terminating her employment contract, in violation of 42 U.S.C. § 1981. Defendants moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(5) and (6), for failure to serve within 90 days and for failure to state a claim upon which relief can be granted, respectively. For the reasons stated below, the motion is denied.

## BACKGROUND[1]

Plaintiff is an African-American woman who resides in Brooklyn, New York and works as a nanny. Defendants Lynsey Plasco-Flaxman and Joel Plasco are a married couple with residences in Suffolk County, New York and New York, New York. Defendants, seeking a nanny to care for their newborn baby, received Plaintiff's name from a mutual contact. On or around July 29, 2016, Plaintiff received a text message from Ms. Plasco-Flaxman, and the parties set up a time to discuss

---

[1] These facts are drawn from the Amended Complaint and are construed in a light most favorable to Plaintiff. *See Novio v. N.Y. Acad. of Art*, 317 F. Supp. 3d 803, 806 (S.D.N.Y. 2018).

the position over the phone. When the parties spoke, they discussed what Defendants were looking for, when Plaintiff could start, how long the position would last, and how much Defendants were willing to pay. Plaintiff and Defendants agreed on $350.00 a day for seven days a week, plus lodging, and further agreed that Plaintiff would stay with Defendants for six months with a likely extension. Plaintiff agreed to meet Defendants on Long Island on August 8, 2016, but when Ms. Plasco-Flaxman said she was having trouble with her current nanny, Plaintiff decided to go to Long Island on August 4, 2016. Plaintiff packed enough clothes for an extended stay with Defendants, including toiletries and several uniforms. She also arranged to have her grandchildren picked up from school and she secured her apartment in preparation for a lengthy absence.

Plaintiff and Ms. Plasco-Flaxman texted periodically while Plaintiff traveled to Long Island on August 4, 2016. Around 1:47 p.m., Plasco-Flaxman texted Plaintiff that she was in a Black Range Rover. Once Plaintiff arrived, she stepped off the train and walked toward Defendants' car. Around 1:49 p.m., Plasco-Flaxman sent the following text message—really intended for her husband—to Plaintiff: "NOOOOOOOOOOO ANOTHER BLACK PERSON." She then sent the same message to Plaintiff again at 1:50 p.m. Ms. Plasco-Flaxman then stepped out her car and greeted Plaintiff, stating how nice it was to meet her. She explained her current nanny situation and what was expected of Plaintiff.

Upon arriving at Defendants' residence, Ms. Plasco-Flaxman introduced Plaintiff to her family and showed Plaintiff where she would sleep. Ms. Plasco-Flaxman told Plaintiff to make herself comfortable. Shortly thereafter, Ms. Plasco-Flaxman allegedly realized that she accidentally sent the text messages to Plaintiff, and tried to explain that the texts were meant for her husband and not for her. Plaintiff thereafter witnessed both Defendants outside of the house by the pool having a discussion. Upon returning inside, Ms. Plasco-Flaxman—with Mr. Plasco

present—stated that she and her husband were uncomfortable and needed to terminate Plaintiff. Ms. Plasco-Flaxman stated that their outgoing nanny was also African-American and did not do her job properly, and that she and her husband had been expecting a Filipino nanny, not an African-American one. Mr. Plasco allegedly "agreed" with his wife. Defendants told Plaintiff that "they [we]re not racist," and then placed Plaintiff in an Uber and sent her home.

As a result of Defendants' actions, Plaintiff alleges she has been denied employment opportunities providing substantial compensation, in violation of 42 U.S.C. § 1981.

## DISCUSSION

### I. Improper Service of Process

#### A. Legal Standard for Rule 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim for improper service of process. Under Rule 12(b)(5), "the plaintiff bears the burden of proving [the] adequacy" of service. *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (internal quotation marks and citation omitted). In evaluating whether service of process was proper, the Court must look to Federal Rule of Civil Procedure 4. The Court is required to dismiss an action if service was improper or incomplete "unless it appears that proper service may still be obtained." *Garcia*, 2017 WL 1169640, at *4 (quoting *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986)).

Under Rule 4(m), however, a district court must grant a plaintiff an extension of time for service if the plaintiff demonstrates good cause. "The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000). "Good cause . . . is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances

beyond the plaintiff's control." *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). "Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service." *Vantone*, 2016 WL 3926449, at *2. Furthermore, a "delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause." *AIG*, 197 F.R.D. at 108.

### B. Plaintiff Has Established Good Cause for Failure to Timely Serve

The Court is satisfied that Plaintiff should be excused for her failure to timely serve Defendants. Defendants argue that Plaintiff knew their address for more than two years before filing the complaint, and that she did not attempt service for several months after filing it. Memo. at 4–5. In response, Plaintiff's counsel outlines by affirmation the various attempts he made to inform Defendants of this lawsuit and serve them. First, two days after filing the complaint, he informed Defendants' former counsel that the complaint had been filed. Luke Aff. ¶ 4. Second, approximately two weeks later, Plaintiff's counsel provided a process server with Defendants' home address in Manhattan and Mr. Plasco's place of business. *Id.* ¶ 7. The email correspondence accompanying the affirmation demonstrates that in subsequent weeks, Plaintiff's counsel was in frequent communication with the process server, who unsuccessfully made several attempts at serving Defendants. *See* Luke Decl., Ex. D. On November 13, 2018, the process server informed Plaintiff's counsel that it had "attempt[ed] service" at Defendants' Manhattan address. *See* Luke Decl., Ex. D at 6. The same day, Plaintiff's counsel directed the process server to serve Mr. Plasco at his job, and provided two addresses, indicating that the second one was where Defendant was located. *See id.* at 7. The process server wrote back on December 10, 2018, indicating that it had again attempted service, this time at the supposed location of Mr. Plasco's employment. *See id.* at

11. Plaintiff's counsel promptly suggested that the process server effect nail-and-mail service on the door of Defendants' residence. *See id.* at 12. Finally, the process server served Defendants at their residence on December 28, 2018, three days after the 90 day deadline. Luke Aff. ¶ 9.

Plaintiff has shown good cause to excuse the untimely filing. While Defendants maintain that Plaintiff has not provided any reasons why service was purportedly difficult, the email correspondence demonstrates her efforts in detail, and belies Defendants' assertion that "Plaintiff did not attempt service for several months." Memo. at 2. In fact, Plaintiff made several attempts at service shortly after filing the complaint. Although Plaintiff's counsel could have followed up with the process server more diligently, the failure to timely serve does appear to have resulted from circumstances beyond Plaintiff's control, despite her reasonable efforts. This is not a situation where inadvertence, negligent, or mistake of Plaintiff's counsel caused the delay in service. Nor were Defendants prejudiced by service of the complaint three days after the 90-day deadline. Indeed, Mr. Plasco's reported comments regarding the lawsuit in a September 28, 2018 story in the New York Post, *see* Luke Decl., Ex. C, demonstrate that Defendants had notice of the lawsuit just days after it was filed. Good cause thus excuses Plaintiff's untimely service.

## II. Failure to State a Claim

### A. Legal Standard for Rule 12(b)(b)

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws all

5

reasonable inferences in the plaintiff's favor. *See Lopez v. Acme Am. Envtl. Co., Inc.*, No. 12-CV-511, 2012 WL 6062501, at *2 (S.D.N.Y. Dec. 6, 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not accepted as true and do not suffice to state a plausible claim. *Iqbal*, 556 U.S. at 678.

### B. Plaintiff Has Stated a Claim for Relief

"To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000) (citation omitted). "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Id.* (citing 42 U.S.C. § 1981(a)). The first prong is easily satisfied here, as Plaintiff pled that she is African-American. Am. Compl. ¶ 6.

On the second prong, Plaintiff has plausibly alleged that Defendants intended to discriminate against her on the basis of race. As to Ms. Plasco-Flaxman, accepting Plaintiff's allegations as true, Ms. Plasco-Flaxman explicitly told Plaintiff that she was terminating her because their outgoing nanny was African-American, the nanny did not do her job properly, and Defendants expected Plaintiff to be Filipino. The most plausible inference to be drawn from this statement is that Ms. Plasco-Flaxman associated Plaintiff, who is also African-American, with the outgoing nanny whose performance was lackluster, and that because Plaintiff was African-American and not Filipino, she would be terminated. Thus, according to the Amended Complaint, Ms. Plasco-Flaxman explicitly acknowledged that her decision was based on Plaintiff's race. *See Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364, 366 (S.D.N.Y. 2014) (plaintiff stated claim

for relief where prospective employer allegedly told plaintiff he would not hire him because plaintiff was not a U.S. citizen), *amended*, No. 14-CV-5107, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014). In their papers, Defendants do not acknowledge these alleged facts, instead claiming that Plaintiff's action is based solely on the text messages Ms. Plasco-Flaxman accidentally sent to Plaintiff. These text messages, Defendants maintain, are protected by the marital communications privilege, which provides that "[c]ommunications between spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged . . . ." *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011). At this stage, however, the Court need not determine whether these messages constitute confidential marital communications, given that Ms. Plasco-Flaxman's alleged oral statements to Plaintiff alone suffice to satisfy the intent-to-discriminate prong of 42 U.S.C. § 1981(a).

Defendants argue separately that the action must be dismissed against Mr. Plasco, as there are no allegations against him that can establish personal involvement in an alleged act of discrimination. The Court disagrees. The allegations against Mr. Plasco are sufficient to satisfy the second prong of 42 U.S.C. § 1981(a), as Plaintiff has alleged that Mr. Plasco "agreed" with his wife's stated reason for terminating Plaintiff. Am. Compl. ¶ 36. While the Amended Complaint does not specify whether Mr. Plasco agreed with all of Ms. Plasco-Flaxman's alleged statements—including the discriminatory statements discussed above—or only with her comment that she was "uncomfortable and needed to terminate Plaintiff," *id.* ¶ 35, it is reasonable to infer that he assented to all of his wife's stated justifications. Furthermore, Ms. Plasco-Flaxman allegedly stated that "they" were expecting a Filipino nanny, as opposed to an African-American one, lending further support to the allegation that together the couple intended to discriminate against Plaintiff. Thus, as to both Defendants, the second prong of 42 U.S.C § 1981 is satisfied.

7

On the third and final prong, Plaintiff has plausibly alleged that the discrimination concerned her right to "make and enforce contracts." 42 U.S.C. § 1981(b). The Supreme Court has made clear that under § 1981, a plaintiff is entitled to relief "when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *see also Underdog Trucking, L.L.C. v. Cellco P'ship*, 514 F. App'x 31, 32 (2d Cir. 2013). Even if Plaintiff and Defendants had not entered into a verbal contract prior to August 4, 2016, the detailed allegations regarding contract negotiations, the agreed-upon rate and duration of employment, and both parties' preparation for Plaintiff to begin working for Defendants clearly demonstrate a "proposed contractual relationship." *Weerahandi v. Am. Statistical Ass'n*, No. 14-CV-7688, 2015 WL 5821634, at *6 (S.D.N.Y. Sept. 30, 2015). Plaintiff has thus plausibly alleged that Defendants' discrimination against her concerned her right to make and enforce a contract, and has stated a claim upon which relief can be granted.

## CONCLUSION

In light of the foregoing, Defendants' motion is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 13. The Court will issue a separate order for counsel in this case to appear for a status conference.

SO ORDERED.

Dated: May 29, 2019
New York, New York

_____
Ronnie Abrams
United States District Judge

8